UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KIC SUZHOU AUTOMOTIVE PRODUCTS LTD and KIC GROUP, LLC, | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | 1:05-cv-1158-LJM-WTL |
| XIA XUGUO; XIA XIAOLING; XIA XIANGLING; SUZHOU GUOWEI MACHINERY COMPANY, a/k/a SUZHOU CARWAY MACHINERY CO., LTD; SUZHOU GUOWEI TRADING COMPANY LIMITED; and YOU SHI TECHNOLOGY CO., LTD., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

This cause is now before the Court on plaintiffs', KIC Suzhou Automotive Products Ltd. ("KIC Suzhou") and KIC Group, LLC (collectively, "KIC"), Motion for Preliminary Injunction. KIC contends that it has a reasonable likelihood of success in proving, at a minimum, its conversion claim against all defendants, and in particular, the only defendant who has appeared in this cause, Xia Xiaoling ("Ms. Xia").[1] Moreover, KIC contends that it will be irreparably harmed if the Court does not enjoin all the defendants from dissipating or transferring to foreign countries assets held in the United States. Ms. Xia argues that KIC cannot show a reasonable likelihood of success on the merits because she never intended to convert any of KIC's funds. Moreover, Ms. Xia contends that the assets KIC seeks to freeze either do not belong to her or are held jointly by a non-party.

---

[1] The Court notes that evidence presented at the Preliminary Injunction Hearing in this cause suggests that Ms. Xia is the owner of Suzhou Guowei Machinery Company, also a defendant in this case.

The Court held a hearing on this matter and has considered the evidence presented. For the foregoing reasons the Court **GRANTS** KIC's Motion for Preliminary Injunction.

## I. EVIDENTIARY BACKGROUND

KIC Suzhou is a wholly owned foreign enterprise under the laws of the Peoples Republic of China, with its principal place of business in Suzhou, Jiangsu Province, China. KIC Suzhou's primary business is to manufacture and sell trailer axles and trailer parts for commercial vehicles.

KIC Group is a Washington limited liability company with its principal place of business in Vancouver, Washington. KIC Group owns KIC Suzhou. Under Chines law, KIC Suzhou could, and regularly did, "repatriate" 70% of its profits to KIC Group.

Defendant Xia Xuguo ("Mr. Xia") is a resident of Suzhou, Jiangsu Province, China. From approximately 1995 through June 2005, Mr. Xia was general manager of KIC Suzhou. Hr'g Tr. at 9. As such, Mr. Xia managed KIC Suzhou's operations in China. *Id.* at 9-10. KIC direct-deposited to an account belonging to Mr. Xia in Indianapolis a portion of Mr. Xia's salary totaling less than $1,000.00 per month. Hr'g Tr. at 10.

Mr. Xia currently has at least one bank account in Indiana with Bank One, Account Number 000705030743912 ("Bank One account"). Pl.'s Exh. 8, Saving Summ., June 1-31, 2005. As of June 2005, the account had in it in excess of $300,000.00. *Id.* Mr. Xia's sister, Ms. Xia, has durable power of attorney for Mr. Xia at least with respect to the Bank One account.[2] Pl.'s Exh. 5, Letter,

---

[2] The Court notes that the evidence is unclear as to the extent of Ms. Xia's power of attorney for Mr. Xia. A letter apparently drafted by Mr. Xia to Bank One indicates that Ms. Xia has "durable power of attorney," but no legal documents attesting to the limits of that power were offered into evidence. *See* Pl.'s Exh. 5, Letter, From: Xuguo Xia, To: Bank One, Attn: Mr. Mark P. Clark, Nov. 8, 2002.

From: Xuguo Xia, To: Bank One, Nov. 8, 2002.  Moreover, the checks in Ms. Xia's possession for the Bank One account bear both Mr. Xia's name and Ms. Xia's name as "P.O.A."  Pl.'s Exh. 13, Check Book.  Ms. Xia has written at least two checks on that account and merely signed her own name.  Pl.'s Exhs. 11 & 12.  At least one of those checks was apparently presented to Bank One.  Pl.'s Exh. 11, Check #541, Aug. 4, 2005.

Ms. Xia is a United States citizen and resides in Carmel, Indiana.  Hr'g Tr. at 52, 69.  Ms. Xia is the sole owner of defendant Suzhou Guowei Machinery Company ("SGM").  Pl.'s Exh. 2; Hr'g Tr. at 57, 61, 71.  SGM is a wholly owned foreign enterprise under the laws of China with its principal place of business in Suzhou, Jiangsu Province, China.  Pl.'s Exh. 2.

Ms. Xia testified at the hearing that she knew that the Bank One account contained her brothers money, some or most of which she assumed he earned at KIC.  Hr'g Tr. at 58.  In addition, Ms. Xia testified that in November 2002, she used $175,000.00 from the Bank One account as the capital to start SGM.  Hr'g Tr. at 56-57.  Records recovered by KIC also indicate that $175,000.00 from the Bank One account was used to incorporate SGM with Ms. Xia as sole owner.  Pl.'s Exhs. 6, Wire Transfer Credit Acct. Remitter; Hr'g Tr. at 57, 61, 71.  Ms. Xia testified that she considers SGM her company, with the understanding that others would run the company.  Hr'g Tr. at 57-63.  Ms. Xia testified that the $175,000.00 was a loan, however, there have never been any attempts by Mr. Xia to set an interest rate, collect interest or otherwise receive remuneration for the loan from Ms. Xia.  *Id.* at 72.

Ms. Xia testified that she visited with her brother, Mr. Xia, in China once in 2003, and visited the facilities Mr. Xia represented to her was owned by SGM, but were in fact owned by KIC.  *Id.* at 77-78.

Documents kept by Mr. Xia and others at KIC's facility in Suzhuo reflect that at the board of director's meeting for SGM on March 8, 2004, the board approved the final accounting for SGM for the year 2003. Pl.'s Exh. 1, ¶ 1 DECISION. The same report indicates that SGM distributed 1,895,621.67 RMB (or approximately, $230,000.00 US) to Ms. Xia. *Id.* The company's board apparently decided to keep 10% of the profits from 2003 "as reserve fund, business development fund, and employee bonus and benefits." *Id.* A Chinese tax certificate indicates that the Chinese government would allow the transfer of such profits to the United States on behalf of Ms. Xia, because the income tax owned on such distribution was exempted. *Id.* ¶ 7. Other SGM company records indicate that Ms. Xia approved several tax statements as they bear her signature in printed form. *Id.* ¶¶ 4,5. However, Ms. Xia testified that she never signed any such documents. Hr'g Tr. at 61.

Sometime in 2003, KIC began to question Mr. Xia about the reduction in profits it was experiencing as a result of an increase in the cost of goods sold. Hr'g Tr. at 12. KIC indicated to Mr. Xia that it expected him to correct this problem. *Id.* He failed to do so, therefore, in June 2005, Mr. Gregory R. Hatton ("Hatton"), owner and manager of KIC Group, traveled to China for the purpose of firing Mr. Xia. *Id.* at 11-12. Hatton met with Mr. Xia on June 16, 2005, and advised him that his performance was unacceptable. *Id.* at 12. When Hatton returned to KIC's facility on June 17, 2005, to effectuate the termination of employment, the employees rioted; Mr. Xia locked Hatton and his son in a conference room. *Id.* Later, after being released by police from the conference room, Hatton learned from KIC employees that Mr. Xia and others were destroying or removing from KIC's premises documents related to SGM. *Id.* at 13. Hatton discovered thousands of documents related to SGM mixed with KIC's own financial records. *Id.* at 36-37. Upon inspection

4

of these documents it became apparent to Hatton that SGM was acting as a middleman between KIC and its suppliers and adding no value, but marking up the cost of the items sold to KIC. *Id.* at 18. The records Hatton found also indicated that SGM had only two employees on its payroll, a door guard and a warehouse worker; all other principals of the company were paid by KIC. *Id.* at 23. Hatton estimated at the hearing that SGM[3] had embezzled approximately $2.5 million between 2002 and June 2005. *Id.* at 18.

Hatton also founds records of a "cash box" through which Mr. Xia would funnel money without invoices, and from which Mr. Xia and others would take "bonuses." *Id.* at 19. Hatton estimated at the hearing that through SGM Mr. Xia and his accomplices had embezzled approximately $800,000.00 through the "cash box." *Id.*

In addition to the $175,000.00 from the Bank One account that Ms. Xia used to finance SGM in November 2002, in May 2005, she also used $230,000.00 from the Bank One account to finance the purchase of a new home at 3802 Castle Rock Dr., Carmel, Indiana, until she and her husband could sell the home at 1286 Clifford Circle, Carmel, Indiana. *Id.* at 69. Ms. Xia testified that the money was another loan from Mr. Xia, however, they never agreed to terms. *Id.* at 55.

Ms. Xia testified that she spoke with her brother, Mr. Xia, about the instant suit, but never mentioned to him that he was named as a defendant. *Id.* at 59. Mr. Xia told Ms. Xia to use money from the Bank One account to pay for an attorney. *Id.* 72. Ms. Xia did in fact pay one lawyer with a check written from the Bank One account, *see* Pl.'s Exh. 11, and attempted to pay her current counsel with another check from the Bank One account, *see* Pl.'s Exh. 12, but the second check was

---

[3]It is unclear from the testimony whether the entire amount estimated here was taken through SGM exclusively, or through SGM and the other defendant companies collectively.

voided apparently when Ms. Xia's current counsel refused to accept the check. Hr'g Tr. at 7, 67, 76.

## II. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy granted only when there is a clear showing of need. *See Cooper v. Salazar* 196 F.3d 809, 813 (7th Cir. 1999). In order to be entitled to such relief KIC must show a likelihood of success on the merits, irreparable harm if the injunction is denied, and the inadequacy of any remedy at law. *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 896 (7th Cir. 2001); *Cooper*, 196 F.3d at 813. Once KIC makes this threshold showing, the Court balances the hardship on KIC if the injunction is wrongfully denied against the hardship on the defendants if it is wrongfully granted, and considers the impact of the injunction on the public interest. *See Cooper*, 196 F.3d at 813; *Ferrell v. United States Dep't of Housing & Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999). The injunction will not issue if the factors do not favor KIC.

Although courts should make findings with respect to each of the factors and then weigh each against the other, it is not always necessary to make findings with respect to the relative harms and the public interest when a movant has failed to carry its burden on the crucial threshold factors. *See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994). Logically then, any preliminary injunction analysis should begin with determining the plaintiff's likelihood of success on the merits.

## III. DISCUSSION

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

The evidence presented to the Court during the preliminary injunction hearing suggests that

KIC will succeed on the merits of at least its conversion claim  In Indiana, a civil action may be brought for pecuniary losses that result from a violation of Indiana's criminal conversion statute. *See* Ind. Code § 34-24-3-1.  The criminal conversion statute provides, in relevant part: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." *Id.* § 35-43-4-3.  "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so."  *Id.* § 35-41-2-2(a).  "A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so." *Id.* § 35-41-2-2(b).  "Exerts . . . control over property" "means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property."  *Id.* § 35-43-4-1.

  A reasonable inference from the evidence presented at the preliminary injunction hearing is that at least some of the money in the Bank One account was money Mr. Xia had obtained through Ms. Xia's company, SGM, either on his own behalf or on Ms. Xia's behalf, and such money was money diverted from KIC.  It is a strong inference from the limited paperwork and testimony presented to the Court that SGM was a sham corporation designed to collect revenue from KIC without providing a product or value-added service.  It is also clear from the evidence presented at the hearing that, on paper, SGM's profits were directed to Ms. Xia.  Ms. Xia testified that she never received such proceeds, however, the Bank One account had both hers and Mr. Xia's name on the checks, a fact from which the Court infers that Mr. Xia, acting on behalf of Ms. Xia, could have used the account as a depository for some of SGM's profits.

  Furthermore, Hatton testified that KIC stopped transferring part of Mr. Xia's salary to the Bank One account sometime prior to 1999.  Hr'g Tr. at 10.  In total, Hatton estimated that the

amount of money KIC had transferred to the Bank One account was less than $1,000.00 per month. *Id.* Ms. Xia wire transferred $175,000.00 from the Bank One account to a Chinese bank in 2002. In May 2005, she removed $230,000.00 from the account, but the account balance in June 2005 was over $300,000.00. Hatton's testimony about Mr. Xia's salary level over the years 2000 to 2005, *see id.* at 10, and the fact that KIC did not direct deposit any of Mr. Xia's salary into the Bank One account after 1999, supports an inference that at least some of the money in the Bank One account was deposited by Mr. Xia and was obtained through SGM.

Ms. Xia challenges a finding that she intentionally or knowingly exerted authority over any of KIC's funds. The Court finds that on the facts presented at the hearing, a reasonable inference is that she at least knowingly used the funds in the Bank One account. Ms. Xia testified that she intended to be the owner of SGM and still considers herself the owner of the company, notwithstanding the fact that she used money from the Bank One account as capital for the start up of the company, an account she continued to testify was "her brother's money." *Id.* at 57, 61. Ms. Xia apparently thought that this was okay because even though she owned SGM and intended to be the owner, she knew nothing of business so relied on "others," presumably her brother, to run the business. *Id.* 57-63. She also testified that she visited the KIC/SGM facility in 2003, on which and in which the only prominently displayed sign is that of KIC. *Id.* at 81-82. Ms. Xia testified that she never noticed the prominently displayed evidence that the facility belonged to KIC, not SGM. Ms. Xia also testified that she wrote a check from the Bank One account to an attorney whose help she sought after she received the complaint in the instant case. Hr'g Tr. at 67; Pl.'s Exh. 11. Moreover, Ms. Xia contacted her brother about this lawsuit, but never mentioned to him that he also was named as a defendant. Hr'g Tr. at 59-60. Mr. Xia told Ms. Xia to pay her current attorney from the Bank

One account, which she tried to do. Hr'g Tr. at 72; Pl.'s Exh. 12.

These facts lead to the inference that Ms. Xia knew or should have known that the money in the Bank One account may not belong to her brother. The Court cannot accept that Ms. Xia would fail to inform her brother of this lawsuit if it were clear that the allegations in the complaint were unfounded or if she were as unsavvy as she tried to make herself out to be. Moreover, Ms. Xia intended to own SGM. Even at the preliminary injunction hearing, when asked whether she owned SGM, Ms. Xia stated in the affirmative that the company was hers. She testified that she never intended to profit from her ownership of the company nor received any profits, however, SGM documents reflect that profits of the company were allocated and paid out to her, which is consistent with her ownership position. It stretches credulity to think that Ms. Xia did not suspect that profits from SGM would get deposited in the Bank One account when she made the initial investment from the account and signed incorporation documents, when she allowed her brother to conduct the affairs of SGM, and when she had full authority to use funds from the Bank One account. Moreover, by the very nature of the complaint against her, her brother and her company, Ms. Xia was on notice that funds in the Bank One account may actually belong to someone other than her brother, yet she proceeded to pay one attorney with funds from the account, and attempted to pay a second attorney from the account.

The Court finds that KIC has succeeded in showing that it has a likelihood of success on the merits of its conversion claim.

### B. IRREPARABLE HARM

The Court also finds that KIC has succeeded in evidencing that it would suffer irreparable

harm if the Court did not freeze the Bank One account and attempt to prevent Ms. Xia from dissipating her interest in her home. KIC presented evidence that suggests the Bank One account contains funds embezzled from it through Ms. Xia's company, SGM, and by Mr. Xia. Ms. Xia has already used such funds to purchase a home and to pay an attorney. Any further use or transfer of those funds would significantly impede KIC's ability to obtain the relief it seeks in this action.

The Court finds that KIC has succeeded in showing irreparable harm if the injunction does not issue.

### C. INADEQUACY OF ANY REMEDY AT LAW

The Court finds the likelihood of any assets remaining at the end of this lawsuit is slim given the ability of Ms. Xia to transfer funds from the Bank One account without prior approval. Moreover, unless the Court freezes the asset, Mr. Xia would also be able to withdraw all the funds and close the account, which could destroy any jurisdiction this Court would have to litigate the instant allegations. In other words, the pendency of this law suit depends upon the ability of KIC to obtain jurisdiction over the defendants and such jurisdiction likely turns on the assets in the Bank One account, or the traceable assets from funds from that account. Moreover, Ms. Xia has evidenced her support of her brother to elude the jurisdiction of this Court when she failed to inform him that he is a named defendant in this cause. This fact makes it difficult for the Court to conclude that KIC will have an adequate remedy at law absent an injunction.

For these reasons, the Court finds KIC's remedy at law inadequate.

### D.  BALANCE OF HARMS

Having found that KIC succeeded in making the threshold showing for an injunction to issue, the Court must now balance the hardship on KIC if the injunction is wrongfully denied against the hardship on Ms. Xia, and arguably the other defendants, if it is wrongfully granted, and considers the impact of the injunction on the public interest.  The Court has already addressed the hardship on KIC if the injunction does not issue.  The greatest hardship on Ms. Xia is the potential encumbrance on her property at 3802 Castle Rock Dr., Carmel, Indiana, because she professes to have no interest, other than power of attorney, in the Bank One account.  Although this could be a burden, at this juncture, Ms. Xia would not be forced to sell the asset, merely preserve it until this litigation is over.  In the balance, the hardship on KIC of never having redress for the harm done to it far outweighs the hardship to Ms. Xia to freeze the Bank One account and put a lien on her home.  This is particularly true when the Court factors in the public interest in preventing conversion at the least, and racketeering at the worst.

The Court finds that the balance of hardships tips heavily in KIC's favor.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiffs', KIC Suzhou Automotive Products Ltd and KIC Group, LLC, Motion for Preliminary Injunction.  Accordingly, Defendants are preliminarily enjoined, pending resolution of this suit, from removing, transferring, encumbering, or dissipating any assets within the United States that they have earned or received as a result of their dealings with Plaintiffs, including but not limited to the funds contained within the Bank One account 705030743912, and the real property located at 3802 Castle Rock, Carmel, Indiana.

Plaintiffs have previously filed with the Court a $50,000.00 bond, which instrument shall remain in full force and effect during the pendency of this preliminary injunction.

  IT IS SO ORDERED this 19th day of August, 2005.

                   LARRY J. McKINNEY, CHIEF JUDGE
                   United States District Court
                   Southern District of Indiana

Electronically distributed to:

James Braden Chapman II
DANN PECAR NEWMAN & KLEIMAN
jchapman@dannpecar.com

David K. Herzog
BAKER & DANIELS
david.herzog@bakerd.com

Catherine A. Meeker
BAKER & DANIELS
cameeker@bakerd.com

Mark Richard Waterfill
DANN PECAR NEWMAN & KLEIMAN
mwaterfill@dannpecar.com